IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERESA FLEMING, DAVID DOYLE,
and PAULA PAPPONI,

               Plaintiffs,

v.                                No. 13-CV-222 WJ/RHS

EDDIE GUTIERREZ, in his individual
capacity; SALLY PADILLA, in her
individual capacity; EILEEN GARBAGNI,
in her official capacity; DIANA DURAN,
in her official capacity; and
SANDOVAL COUNTY
BOARD OF COMMISSIONERS,

               Defendants.

## MEMORANDUM OPINION AND ORDER DENYING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** comes before the Court upon Defendants' Motion for Summary

Judgment, filed April 16, 2014 (**Doc. No. 74**).  Having reviewed the parties' briefs and the

applicable law, the Court finds that Defendants' Motion is not well-taken, and therefore, is

DENIED.

### Background

This case arises out of problems administering the 2012 general election in Rio Rancho,

New Mexico, which led to excessively long lines of citizens waiting to vote on Election Day,

with some wait times exceeding five hours.[1]  Defendants move for summary judgment on

Plaintiffs' Second Amended Complaint on three main bases.  First, Defendants argue that

---

[1] This Court has previously set out the relevant background facts in detail in its Memorandum Opinion and Order
("MOO") Denying Defendants' Motion to Dismiss for Failure to Name Indispensable Parties, or in the Alternative,
Motion to Require Plaintiffs to Join Necessary and Indispensable Parties ("Motion to Dismiss") filed August 21,
2013 (**Doc. No. 44**).

Plaintiff's claims are moot, because Defendants voluntarily took steps to alleviate the conditions that lead to the long wait times.  Second, and related to the first argument, Defendants argue that Plaintiffs lack standing because their claims cannot be redressed at this time.   Finally, Defendants assert that Plaintiffs' Second Amended Complaint fails to state a claim under Section 1983, because Plaintiffs fail to identify an intentional, rather than simply negligent act, by Defendants.

## Discussion

### I.    Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir. 2009).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Id.  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings.  Anderson v. Liberty Lobby, 477 U.S. 242, 256-57 (1986).  In order to avoid summary judgment, the nonmoving party must put forth enough evidence that a reasonable jury could return a verdict in the nonmovant's favor.  Id. at 249.  A mere scintilla of evidence in the nonmovant's favor is not sufficient.  Id. at 252.

### II.    Mootness

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." Disability Law Ctr. v. Millcreek Health Ctr., 428 F.3d 992, 996 (10th Cir.2005) (quotation omitted). "Without a live, concrete

controversy, [Courts] lack jurisdiction to consider claims no matter how meritorious.'" Habecker v. Town of Estes Park, 518 F.3d 1217, 1223 (10th Cir.2008) (quotation omitted).  "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).  A claim for injunctive relief is no longer live when "the explicit objective of the proposed injunction has been met."  F.E.R. v. Valdez, 58 F.3d 1530, 1533 (10th Cir. 1995)

Defendants assert that Plaintiffs' claims are moot because Defendants voluntarily took steps to rectify the situation which gave rise to this lawsuit.  Specifically, Defendants allege that the resolutions passed by the Sandoval County Board of Commissioners ("the Board") on October 25, 2013 render Plaintiffs' claims moot.   On October 25, 2013, the Board passed a resolution designating seventeen (17) Voting Convenience Centers for the City of Rio Rancho (the 2012 election only had 5 Voting Convenience Centers).  Additionally, the Board passed a resolution designating four (4) AutoVote printers for those Voting Convenience Centers that consolidated three (3) precincts and three (3) AutoVote printers for those Voting Convenience Centers that consolidated three (2) precincts.  There were only three printers at each of the five voting centers for the 2012 election. Both of these resolutions contain the caveat these allocations are subject to change.  Plaintiffs argue because these steps were voluntary measures and Defendants retain the discretion to change these provisions, these voluntary actions do not render Plaintiffs' claims moot.

One exception to a claim of mootness is a "defendant's voluntary cessation of an alleged illegal practice which the defendant is free to resume at any time." Chihuahuan Grasslands Alliance v. Kempthorne, 545 F.3d 884, 892 (10th Cir.2008). The Supreme Court has stated that as a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal

of power to hear and determine the case, *i. e.*, does not make the case moot." Los Angeles Cnty. v. Davis, 440 U.S. 625, 631 (1979) (citation omitted).  "The rule that 'voluntary cessation of a challenged practice rarely moots a federal case ... traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior.' " City News & Novelty, Inc. v. City of Waukesha, 531 U.S. 278, 284 n. 1 (2001)). "In other words, this exception exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." Chihuahuan Grasslands Alliance, 545 F.3d at 892. However, voluntary cessation may make a case moot where: "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Davis, (internal citations omitted).  "[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction."  Rio Grande Silvery Minnow v. Bureau of Reclamation, 601 F.3d 1096, 1115-16 (10th Cir. 2010) (citation omitted).  The party asserting mootness bears the "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again."  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (alteration in original).

Although the Tenth Circuit of course follows the general rule regarding voluntary cessation set forth by the Supreme Court, it has found that in certain instances voluntary cessation does render a claim moot.  The Tenth Circuit has noted, the "mere possibility" that an agency might rescind amendments to its actions or regulations does not enliven a moot controversy."  Rio Grande Silvery Minnow, 601 F.3d at 1118 (citation omitted).  The Tenth Circuit also requires some showing that the voluntarily ceased activity will begin again.  See id.

("We will not require some physical or logical impossibility that the challenged policy will be reenacted absent evidence that the voluntary cessation is a sham for continuing possibly unlawful conduct.") (citation omitted);  see also Comm. for First Amendment v. Campbell, 962 F.2d 1517, 1525 (10th Cir. 1992) ("we also recognize that some reason must support Plaintiffs' insistence that the alleged violation is likely to recur.").

The Court commends Defendants on voluntarily taking steps to rectify the voting resources situation.  However, the Court is concerned that Defendants are free to amend the resolutions passed and return to the previous insufficient number of voting centers and voting machines.  Under state law,  Defendants are unable to change the polling locations within four months of the election without approval of a stte district judge; however, Defendants retain the discretion to reallocate the voting machines and printers up to and even on Election day.  See NMSA §1-3-5 ("No precinct shall be created, divided, abolished or consolidated or boundaries or polling place therein changed less than four months prior to each election, except by of the district court."). Further, the actual amount of voting machines is not a fixed number, but is instead simply an equation whose result in subject to change. Defendants apparently grossly underestimated the voter turn-out for the 2012 elections, and there is a reasonable chance they will do it again.  Further, as Plaintiffs set forth in their Response, this is not the first time that there have been issues with voting in Rio Rancho, albeit never as severe as the 2012 election. Moreover, if Defendants were to change the resolutions and the 2014 elections were the same catastrophe as the 2012 elections, there could be no meaningful remedy.  Money damages would not adequately compensate voters who were unable to vote because of unreasonably long lines. Although absolutely certainty that the violation will not recur is not required in order to find mootness, here there is not a sufficient guarantee that Defendants will not resume their allegedly

illegal practices.   Defendants essentially ask the Court to "trust them" to do the right thing in the future.  The Court cannot stake a right as fundamental of the right to vote on officials who have previously grossly mishandled elections without some sort of safeguard beyond their word.  The Court finds that the violations may be reasonably expected to recur in the future.  Therefore, even though the resolutions do fully address Plaintiffs' concerns for now, the Court finds that this matter is not moot.[2]

## III.    Standing[3]

In the alternative, Defendants argue that Plaintiffs no longer have standing because they have no redressable injury. A redressable injury is one the three minimum requirements for standing.  See Nova Health Sys. v. Gandy, 416 F.3d 1149, 1154 (10th Cir. 2005) ("First, the plaintiff must have suffered an 'injury in fact'… [] Second, there must be a causal connection between that injury and the challenged action of the defendant—the injury must be 'fairly traceable' to the defendant, and not the result of the independent action of some third party. [] Finally, it must be likely, not merely speculative, that a favorable judgment will redress the plaintiff's injury.") (citation omitted).   Article III requires that the plaintiff demonstrate a substantial likelihood that the relief requested will redress its injury in fact. Ash Creek Mining Co. v. Lujan, 969 F.2d 868, 875 (10th Cir.1992). The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury. Larson v. Valente, 456 U.S. 228, 243 n. 15, (1982).

Defendants' redressability argument is substantially the same as their mootness

---

[2]   During a status conference in this matter, Plaintiffs conceded that the current resolutions would address nearly all of their concerns.

[3]    At the August 19th hearing based on difficulties in serving Plaintiff Fleming with a subpoena, Defendants expressed concern that Plaintiff Fleming no longer resides in Sandoval County, and therefore lacks standing to pursue this matter as she cannot vote in future Sandoval County elections.  Defendants admitted they had been unable to confirm this fact before the hearing and that they currently lack a good faith basis to move for dismissal on this ground.  Accordingly, the Court will allow limited discovery into the issue.  If Plaintiff Fleming has indeed moved away from Sandoval County, Defendants may again raise the issue of standing in the appropriate motion.

argument, that Defendants' voluntary resolutions have addressed all of Plaintiffs' concerns. However, as the Court noted in its discussion of mootness, although Defendants have taken steps to address the situation there is no guarantee that Defendants will abide by the promised numbers of voting centers and machines when the election comes.  Thus, Plaintiffs' requests have not been addressed in any final manner.  Accordingly, Plaintiffs' injuries will be relieved by a favorable judgment that requires Defendants to keep a certain amount of voting resources in place rather than simply allowing Defendants to make up their own minds.  Additionally,  as a practical matter, holding that Defendants' voluntary cessation does not render the matter moot would have no effect if the Court were to find that Defendants' voluntary cessation would make Plaintiffs' no longer redressable; thus defeating the Supreme Court's purpose is establishing the general rule that voluntary cessation does not render a claim moot.

Therefore the Court holds that Plaintiff's injuries are still redressable, and they have standing to continue this lawsuit.

## IV.     Failure to State a Claim

Finally, Defendants argue that Plaintiffs have failed to state a Section 1983 claim because the Complaint addresses only negligent rather than intentional actions.  The disposition of this argument turns on the definition of intentional.  Defendants argue an act is only intentional if it is intended to deprive Plaintiffs of their constitutional rights while Plaintiffs contend that an intentional act which has the result of depriving Plaintiffs of their constitutional rights is sufficient.

Defendants argue that the standard is "willful action by state officials intended to deprive individuals of their constitutional right to vote."  See (Doc. No. 74), p. 8.   However, Tenth Circuit and Supreme Court precedent make it clear that Section 1983 liability is established if

there is an intentional act which causes a deprivation.  "A specific intent to deprive a person of his constitutional rights, while required under the criminal civil rights statutes, is not a prerequisite to liability [under Section 1983]." Stringer v. Dilger, 313 F.2d 536, 540 (10th Cir. 1963).  "The requisite causal connection is satisfied if [Defendants] set in motion a series of events that [Defendants] knew or reasonably should have known would cause others to deprive [Plaintiffs] of [their] constitutional rights." Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012) (citation omitted).  Indeed, "Section [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." Id.

Defendants rely heavily on Shannon v. Jacobowitz, 394 F.3d 90 (2nd Cir. 2005) in support of their argument that Plaintiffs have failed to allege an intentional act.  However, Shannon is distinguishable in several respects.  Shannon dealt with an election in which a voting machine malfunctioned and failed to count a number of properly cast votes.  Id., at 92.  Several of the voters whose votes were not counted brought a lawsuit alleging a violation of their Due Process rights.  Id.  The district court specifically found that there was no intentional act by the defendants, but nevertheless granted an injunction based upon the fact that money damages would not be an adequate remedy.  Id., at 93.  There was no evidence in the record that the defendants knew about the voter machine malfunction prior to the election.  See id, at 96 ("Both sides concede that the recorded results were likely due to an unforeseen malfunction with [the] voting machine."). The Second Circuit reversed the district court's holding stating "that the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." 94.  Defendants argue that Shannon stands for the proposition that the official must have intended to interfere with the voting process in order to be

8

liable under Section 1983.  This reading of Shannon was specifically disavowed by the Second Circuit in  Rivera-Powell v. New York City Bd. of Elections, 470 F.3d 458 (2nd Cir. 2006):

> To the extent that our prior case law has suggested that in order to consider election officials' conduct "intentional" the officials must have the intent actually to interfere with the electoral process, see Shannon v. Jacobowitz, 394 F.3d 90, 96 (2d Cir.2005)[] we wish to clarify that that is not the case. Shannon [] which dealt with inadvertent election irregularities such as voting machine malfunctions, were not addressed to a situation like the one presently before us, where plaintiffs challenge the decision of a government body. Such a decision amounts to intentional, as opposed to negligent, action regardless of whether the actors' intent was wrongful.

Id., 465, n.7.

The other cases cited by Defendants are equally inapposite because they concerned unforeseen or inadvertent malfunctions that are not present here.  Defendant Gutierrez testified that although he was aware that there is generally a significantly greater amount of voters in the general election than there is in the primary, he still made a conscious decision not to add more voting equipment for the general election.  Accordingly, his action, even if not intended to deprive voters of their civil rights, was intentional.  Therefore, the Section 1983 claims in Plaintiffs' Amended Complaint are sufficient to survive a motion for summary judgment.

**THEREFORE, IT IS ORDERED**, that Defendants' Motion for Summary Judgment, **(Doc. No. 74)** is **DENIED** for the reasons stated in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE