IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TERESA FLEMING, DAVID DOYLE,
and PAULA PAPPONI,

                Plaintiffs,

v.                                       No. 13-CV-222 WJ/RHS

EDDIE GUTIERREZ, in his individual
capacity; SALLY PADILLA, in her
individual capacity; EILEEN GARBAGNI,
in her official capacity; DIANA DURAN,
in her official capacity; and
SANDOVAL COUNTY
BOARD OF COMMISSIONERS,

                Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION
### and
### DISMISSING THE CLAIMS AGAINST DEFENDANTS
### <u>SANDOVAL BOARD OF COUNTY COMMISSIONERS, DURAN,and PADILLA</u>[1]

**THIS MATTER** comes before the Court upon Plaintiffs' Motion for Preliminary and

Permanent Injunction, filed July 2, 2014 (**Doc. No. 90**).  Having considered the parties' briefs,

the evidence and arguments presented at the hearing conducted on August 19, 2014, and the

applicable law, the Court finds that Plaintiffs' Motion is well-taken, and therefore, is

GRANTED.  Further the Court finds, sua sponte, after having heard all of the evidence presented

regarding the Motion for Injunction, Defendant Sandoval County Board of County

Commissioners is entitled to dismissal of the claims against it.   The claims against Defendant

Sally Padilla shall also be dismissed, as Defendant Padilla has retired and will not participate in

---

[1]   There is a pending motion for reconsideration of this Court's ruling on Defendants' motion for summary
judgment (see Doc. 104), which the Court will address when it is fully briefed.

the 2014 election. Accordingly, the remaining Defendants are Eddie Gutierrez and Eileen Garbagni and these are the parties to whom this preliminary injunction applies.

## Background

This case arises out of problems administering the 2012 general election in Rio Rancho, New Mexico, which resulted in Rio Rancho voters standing in excessively long lines waiting in some instances for more than five hours to exercise their right to vote on Election Day in November, 2012. Simply stated, for many voters in Rio Rancho, the November 2012 general election administered by the Sandoval County Clerk and her Chief of Elections was a debacle.

Plaintiffs assert that they have met legal standards for a preliminary injunction. Specifically, Plaintiffs ask the Court to order Defendants to follow the resolution adopted by the Sandoval County Board of County Commissioners ("the Board") on October 24, 2013 which sets forth the polling locations and number of voting machines at each location for the 2014 election. Defendants contend Plaintiffs are not entitled to injunctive relief and that this Court would offend the notions of federalism by issuing such an order.

## Introduction

Considering the attitude displayed by certain defendants' in this case towards voting in Sandoval County, the Court finds it necessary to begin by outlining what the United States Supreme Court has said about this right.[2] "Voting rights are fundamental, and alleged disfranchisement of even a small group of potential voters is not to be taken lightly." O'Brien v. Skinner, 409 U.S. 1240, 1242 (1972); see also Romer v. Evans, 517 U.S. 620, 650, n.3 (1996) ("the right to vote [is] a fundamental political right") (citation omitted). "Undoubtedly, the right

---

[2] For example, both during her deposition testimony and during the hearing, Defendant Sally Padilla noted that if people wanted to vote, they will stand in line and wait but if people do not want to wait in line they should vote early or absentee. Tr. at 234:4-17; 235:5-15.. In her deposition, Ms. Padilla stated that voting was a privilege although during her in-court testimony she did admit it is a constitutional right. Tr. at 239:11-12. Current elections director Defendant Eddie Gutierrez shared Ms. Padilla's sentiments regarding voter's ability to vote early and absentee. Tr. at 124:7-12.

of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.   Reynolds v. Sims, 377 U.S. 533, 561-62 (1964). Specifically in regards to local elections, the Supreme Court has stated, "participation in local government is a cornerstone of American democracy."  F.E.R.C. v. Mississippi, 456 U.S. 742, 789-90(1982) (J. O'Connor dissenting) (citation omitted).

**Facts**

Based on the 2010 Census population data, Rio Rancho is the largest city in Sandoval County and the third largest city in New Mexico.  Approximately 80% of the Republican voters in Sandoval County live in Rio Rancho.  Thus, Rio Rancho has far more Republican voters than the more rural areas of Sandoval County.  Rio Rancho is also the fastest growing city in New Mexico and over the last decade has averaged a population growth rate of approximately 7% per year.  Defendants Padilla and Gutierrez are registered Democrats.

*Election Process*

During the 2012 election cycle, Defendant Sally Padilla was the duly elected County Clerk for Sandoval County.  Defendant Padilla testified that she worked for Sandoval County in the Clerk's office for 40 years and at various times she was the county clerk and at other times she worked as a deputy clerk.  As County Clerk, she was responsible for administering elections and retained discretion over a number of the aspects of the election process.  See id.; see also generally, the New Mexico Election Code, NMSA 1978 §1-1-1, *et seq.*  Under New Mexico law, the County Clerk is an elected official who does not directly answer to the Board of County Commissioners; the Board of Commissioners does not have the authority to remove a County Clerk.  See State ex rel. Walker v. Dilley, 1974-NMSC-090, 86 N.M. 796, 798, 528 P.2d 209,

211 (noting that while Board of County Commissioners had the authority to fill a vacant County Clerk spot, it had no authority to appoint a third party as County Clerk where there was not a vacancy).    The County Clerk oversees the County Bureau of Elections, headed by a Director, and the County Bureau of Elections assists the County Clerk is administering all elections. Defendant Eddie Gutierrez is the current Director of the Bureau of Elections for Sandoval County and held this same position during the 2012 election cycle.    Similar to Defendant Padilla, Defendant Gutierrez is a veteran of county government, having worked for Sandoval County for approximately 40 years.  While Defendant Padilla was ultimately responsible for the administration of the 2012 election in Sandoval County, she testified that she largely left the administrative and management details of the election to Defendant Gutierrez.  Tr. at 240:  6-11.

One of the responsibilities of the County Clerk is determining how many polling centers there will be for each election.    The County Clerk may not change the polling locations within four months of the election absent an order from a state district court judge.  See NMSA 1978 § 1-3-5.  The County Clerk also determines how many voting machines each polling center will have.  Tr. at 51: 22-25 – 52: 1-14.  The County Clerk then submits a request for the number of voting machines the Clerk believes the county will need to the Secretary of State. Id.  The Secretary of State purchases the voting machines and provides them to the counties.  Id.  Bobby Shearer, the Director of Elections at the Secretary of State's Office, was a witness and the Court found her testimony to be very credible.  Ms. Shearer testified that for the 2012 election, she provided Sandoval County with all the voting machine equipment that was requested and never turned down or rejected a request for voting machine equipment by Sandoval County.  Tr. at 53: 1-6.  Ms. Shearer's testimony undercuts Defendant Gutierrez' claim that he did not request additional voting machines for the 2012 election because additional machines were not available See Tr. at 104:  25 – 105:  1.

4

*The 2012 Election*

The 2012 general election in Rio Rancho was widely recognized as a complete disaster. <u>See</u> Plaintiffs' Exhibit 2 to the August 19, 2014 Hearing (all exhibits to this hearing shall be referred to as "Hearing Exhibits"), Board Resolution dated December 14, 2012.  The lines at the voting centers were extremely long.  <u>Id.</u>  Some voting centers did not close until midnight to accommodate the voters who were still waiting to vote when the polls closed at 7:00 p.m.  <u>Id.</u> Thus, wait times exceeded five hours for some voters.  <u>Id.</u>  Further, there were some voters who were so frustrated by the wait time, or unable to continue waiting, that they left without voting. <u>Id.</u>  The Board found the wait times were "totally unacceptable."  <u>Id.</u>

There were a number of unique circumstances in the 2012 election that likely contributed to excessive wait times.  In 2012, there was a statewide change in how polling places were determined.   Previously all voting had been done by precinct, which is based upon geographic location.   This meant that voters could only vote in the polling place for the precinct where they reside.   In 2012, New Mexico introducing voting convenience centers ("VCC's") which combined precincts in urban areas allowing voters to vote at any VCC regardless of whether the VCC was located in their precinct.   This system is quite helpful to voters in urban areas although it is not as practical for voters in rural areas because of travel distance to VCC's for many rural voters.   Using VCC's means that a voter must check in with a poll worker, wait for his or her name to be located, then wait for a ballot to be printed prior to actually beginning to vote.  Thus, while VCC's may be more convenient for voters, the actual voting process can be longer than at precincts.  In 2012 for the first time, Sandoval County employed a hybrid system with the urban areas (Rio Rancho) utilizing VCC's while the more rural areas used traditional precincts.

Also new in 2012 was the statewide elimination of a straight party option on the ballot. The elimination of the straight party option led to more "spoiled ballots"; a spoiled ballot is a

ballot that a voter incorrectly completes.  When a ballot is spoiled, the voter must go to the front

of the line and ask a poll worker for another ballot.   The increased number of spoiled ballots in

the 2012 election caused delays although the exact length of the delay caused by spoiled ballots

is uncertain.

Although both of these aspects of the 2012 election contributed to the delay, the main

causes of the delay during the 2012 election are undisputed: an insufficient number of VCC's

and voting machines.  For Election Day in 2012, there were 5 VCC's in Rio Rancho.   At each

VCC, there were three AutoVote machines for a total of 15 AutoVote machines in Rio Rancho

on Election Day.

As discussed previously, Defendant Padilla was responsible for determining the proper

amount of voting machines, but she delegated this to her subordinate, Defendant Gutierrez.   In

order to request the proper amount of machines from the Secretary of State, Defendant Gutierrez

estimated the amount of voters in Rio Rancho using the following calculation:

> Rio Rancho Voters 52,000
> 52,000x 70%+ 36,400 (Total Casting Votes)
> 36,4000 x 35% = 12,470 (Estimated Early Voters)
> 36,400-12740= 23,660 (Total Voters After Early Voting)
> 23,660x 35%= 8,281 (Total Voting Election Day at VCC's)
>
> AutoVote Machines 15
> 8,281 Voter ÷15 AutoVote Machines = 552 Voters per Machine
> Voter (sic) Per Hour
> 552÷ 12 Hours + 46 voters Per Hour
> 46 Voters Per Hour
> 46 Voters per Hour x 15 AutoVote Machines = 690 Voters Per Hour
> 690 Voters Per Hour x 12 Hours = 8,280 Election Day
>
> Plaintiffs' Hearing Exhibit 9; See Tr. at 96-106 (Gutierrez testimony relating to
> Ex. 9).

Defendant Gutierrez testified that although there were actually 58,000 registered voters in

Rio Rancho in 2012, he began his analysis with 52,000, because he automatically took 10% off

the top knowing that voter turn-out is never 100%.  He then took an additional 30% off that number, again compensating for the fact that he knew that not all registered voters would vote. Id. Defendant Gutierrez stated this is simply the calculation he uses, he did not provide a justification for why he subtracted 10% then 30% from the total amount of registered voters, or where he derived those values.  Id.  He did not tie these estimates into figures from previous elections.  Id.  He then estimated that approximately 35% of voters would take advantage of early voting (and presumably absentee voting as well because there is not a separate calculation for absentee voting).  Id. Again, Defendant Gutierrez was unable to articulate the origin of the 35% figure for early voting.  Id. Inexplicably, Defendant Gutierrez then used 35% of that figure to reach his estimate of 8,281 estimated Election Day voters.  Id. Defendant Gutierrez offered no basis for his decision to only use 35% of the 23,660 number he arrived at by subtracting the estimated early voters from the total estimated voters as his Election Day voter estimate.  Id. During the hearing, he first admitted using only 35% of the 23,660 number could be called a mistake, but quickly waffled claiming that "we all do math differently."  Tr. at 102:  6-10.

This chart is quite telling for a number of reasons.  Plaintiffs presented the testimony of Dr. Ted Allen, an expert in line waiting analysis, who has experience in both planning for elections and also reviewing previous elections in terms minimizing waiting times and explaining the causes of excessive lines during elections.[3]  However, the most egregious error in Dr. Allen's opinion was Defendant Gutierrez' decision to reduce the 23,660 figure by 65%.  Dr. Allen literally laughed at Defendant Gutierrez' decision to reduce the 23,660 figure by 65%; he further stated this was "a pretty clear mistake". Tr. at 141:  9.  If the Court did not believe that voting was such an important right, it would find Defendant Gutierrez' calculations laughable as

---

[3]  For example, Dr. Allen was concerned with Defendant Guiterrez' decision to eliminate 10% of voters off the top. TR p. 131, l. 21, - p.132, l. 3.  Further, Dr. Allen testified that Defendant Gutierrez made a mathematical error in reducing the number of voters by 70%.  TR p. 132, ll.6-23.

well.  There was absolutely no testimony about where Defendant Gutierrez derived these figures, and they do not seem to be grounded in past experience as they do not coincide with figures from previous elections.  Further, although Defendant Gutierrez averred that he completed this chart prior to the election, it is not dated.

Additionally, Defendant Gutierrez' calculation of the machines required for the 2012 election conflict with the machine manufacturer's statements about processing time.   AutoVote is a specific model name given by the company that manufactures these machines.    The machines used in the 2012 election were a fairly recent addition in Sandoval County.   Defendant Gutierrez had, however, received training on the use of the AutoVote machines from the vender prior to the 2012 election.    AutoVote provides a manual for its machines which details the total estimated time for processing voters.   See Plaintiffs' Hearing exhibit 5.  The manual provided:

> Process time per voter ~1 to 2 minutes per voter
> Ballots per hour per Workstation ~20-25 per hour
> Ballots per Day per Workstation * ~ 250-300 per day
> * 12 hour day

See Plaintiff's Hearing Exhibit 5 p. 9.

Defendant Gutierrez denied having ever seen the manual, although he admitted he had received a packet with a similar cover and he did not go through the packet page by page. Tr. at 84: 13 – 85:  14-16.  Defendant Gutierrez claims a representative from a vendor told him that it would take one to one and half minutes to process each voter.  Tr. at  115:  23-25 - 116:  1-3.[4] To the contrary, however, Ms. Shearer testified that Defendant Gutierrez was present at the training where this manual was provided and that the manual was the governing document for the 2012 election.  Tr. at  48:  21-25 - 49:  6-7.  Further, Ms. Shearer testified that the same time

---

[4] Defendant Gutierrez volunteered to provide an e-mail from an Auto-Vote representative reflecting the one to one and half minute figure.  He wavered however when counsel asked him to provide it before the end of the hearing. Tr. @ 87:  11-12.  Although the Court did not order Defendants to produce the alleged e-mail, the Court notes that no such e-mail has surfaced.

estimates listed in the manual were also provided during the training that Defendant Gutierrez attended.   Tr. at 50: 24-25 - 51:  1-7.   Thus the Court finds that the appropriate calculations should have been based upon the numbers provided by the vendor.

Moreover, the equations themselves belie Defendant Gutierrez' assertions that this chart was not created after the election in an attempt to retroactively justify the abysmal planning or lack thereof.  If this chart, as Defendants claim, was intended to arrive at the proper amount of voting machines, then Defendant Gutierrez would have started with the amount of estimated voters divided by the estimated amount of voters each machine could process, thus arriving at the proper amount of voting machines required.   Defendant Gutierrez' equations start with the presumption, rather than solving for an unknown number, that there will be 15 voting machines. Further, there is absolutely no indication where Defendant Gutierrez would have otherwise arrived at the 552 voters per machine per day figure.   Defendant Gutierrez claims that he was told it would take one to one and a half minutes to process each voter.  This assertion is dubious at best given the lack of evidence to support Defendant Gutierrez' testimony and Ms. Shearer's conflicting testimony.   However, giving Defendant Gutierrez the benefit of the doubt, one and half minute processing time for each voter would result in approximately 40 voters per hour with 480 voters per day per machine based upon a 12 hour voting day.   This scenario still does not justify Defendant Gutierrez' estimate of 552 voters per day.

Defendants also attempted to justify Defendant Gutierrez' calculation by pointing out there that there appears to be an inconsistency in the arithmetic in the manual, because if each voter took a maximum of two minutes to complete the process, there would be a maximum of 30 voters per hour instead of only 25.  See Plaintiffs' Hearing Exhibit 5.  Plaintiff's expert, Dr. Allen, opined that perhaps the company had built in an additional safeguard in case of malfunction by estimating only 25 max voters per hour.  Tr. at 141:  14-23. However, this

conflict is immaterial because even multiplying 30 voters by 12 hours, resulting in a total 360 voters per machine per day, Defendant Gutierrez still grossly under-allocated resources to Rio Rancho in 2012.  Despite throwing around several different theories and equations, Defendant Gutierrez was simply unable to explain why he estimated that the machines could process 552 voters per day in spite of the fact that the vendor who provides the machines only estimated a maximum of 300 voters per machine per day.  Although there is no dispute that there were not enough voting machines in Rio Rancho for the 2012 Election, Defendant Gutierrez' chart (Plaintiffs' Exhibit 9) raises some troubling possibilities about Defendant Gutierrez' ability to administer a just and fair election.

In spite of the fact that straight party voting had been eliminated state wide and other counties had utilized VCC's for the first time, Rio Rancho was the only city in New Mexico that experienced severe voting problems on election day in 2012.  <u>See</u> Tr. at 60: 18-25; 61: 1-6.  It is clear that the 2012 election in Rio Rancho was a debacle.  What is most troubling about the fiasco is how easy it would have been to prevent.  In fact, Dr. Allen testified that out of all the election malfunctions he has studied, either as a paid expert or for purely academic interests, the 2012 election in Sandoval County was the most extreme in terms of preventability.  Tr. at 146: 17-25 - 147:  1.

Two of the named Plaintiffs in this case are Republican candidates who lost extremely tight races (within approximately 200 votes) in the 2012 election.   Defendants' expert, Professor Lonna Atkenson, testified that she could find no statistical proof that Republican candidates were harmed by voters leaving the polls before casting their votes in 2012.  However, because there is no way of determining who left the polls without voting, she cannot state that they were not harmed.  Tr. at 275: 19-25 – 276:  1.   In the 2008 election there were a little over 12,000 voters on Election Day in Rio Rancho.  In 2012, there were approximately 7500 voters in Rio Rancho

10

on Election Day.   There was a reduction of roughly 5300 voters between 2008 and 2012.  This rate of decrease was not experienced in the rest of the state.   The estimate of the drop between 2008 and 2012 does not take into account Rio Rancho's approximately 7% per year of population growth; therefore, there could have many more voters who were unable to vote. Further, the evidence demonstrates that this issue only occurred in Rio Rancho where 80% of the County's Republication voters reside.

The Court agrees with Professor Atkenson that from a statistical proof standpoint, one cannot say that Republican candidates were harmed more by voters in Rio Rancho leaving the polls before casting their votes in 2012.  What is known is that, as a result of deliberate actions by Defendants Padilla and Gutierrez in administering the 2012 general election in Sandoval County, a significant number of Rio Rancho voters were disenfranchised in this election and so no one knows whether the disenfranchised voters were Republican, Democrat, Independent, Hispanic, African-American, Caucasian, Native American, Asian, elderly, disabled or single parents with young children who could not wait five hours to vote.

*Previous issues in Rio Rancho*

A major point of contention in this case concerns whether or not there is proof of previous voting issues in Rio Rancho elections.  While Defendant Gutierrez could not seem to remember whether there were voting problems in Rio Rancho in past elections, Defendant Padilla, the official who has been either in charge of or involved with running elections in Sandoval County for the past forty years, laid this issue to rest with her testimony at the hearing.[5] Defendant Padilla noted that in the 2004 election, one voting center in Rio Rancho did not close

---

[5]   Defense counsel attempted to explain away Defendant Padilla's testimony by arguing that Defendant Padilla was mistaken about the previous issues in Rio Rancho and that Defendant Padilla was just "testifying off the top of her head."  The Court notes that Defendant Padilla's testimony is the evidence in this case; defense counsel's arguments are not.

until 11 p.m. Tr. at 228: 24-25 – 229:  1-7.  Further, although Defendant Padilla could not remember specifics, she testified that there have been long lines in Rio Rancho "many, many times" in the past.  Tr. at 231:  11-18.  In fact, Defendant Padilla testified that a three to four wait was the "norm" in Rio Rancho prior to 2012. Tr. at 231:  19-25 – 232: 1-16.  While a number of other witnesses said they did not remember problems in Rio Rancho prior to 2012, the Court cannot simply ignore the testimony of the official responsible for Rio Rancho elections for the last four decades.

*Reaction to 2012 Election*

As stated above, the Board swiftly condemned the failings of the 2012 election in its December 2012 resolution.  See Plaintiffs' Hearing Exhibit 2.  Additionally, on October 24, 2013, the Board passed a resolution setting out the polling centers and allocating voting machines for the 2014 election.  See Defendants' Hearing Exhibit D.  The 2013 Resolution provides for 17 VCC's in Rio Rancho and also sets forth a formula for determining the amount of voting machines per VCC, which currently totals 89 voting machines for the 2014 election. Id.  Plaintiffs admit that the 2013 Resolution would fully address their concerns regarding the amount of voting resources in Rio Rancho should the Resolution be followed, but are concerned because, on its face, the Resolution is subject to change.   However, by state statute, the County no longer has the discretion to change the location or amount of polling centers without an order by a state district court.  See NMSA 1978 § 1-3-5.  Nevertheless, the County Clerk and her staff retain the ability to reallocate the number of voting machines at each polling center, and could potentially choose not to utilize all of the voting machines they have ordered from the Secretary of State. Tr. at 58: 6-15; Tr. at 69: 4-13.  The ability to change the number of voting machines up to and potentially even on voting day is of major concern to the Plaintiffs and to the Court.

During preliminary statements at the hearing defense counsel indicated that County

Defendants took full responsibility for the unacceptable lines during the 2012 election. However, counsels' broad declarations regarding acceptance of responsibility and an understanding that the 2012 election was unacceptable was not borne out by the testimony of Defendants Gutierrez, Padilla and Garbagni.

Defendant Gutierrez testified that he would not call the election a "debacle."  Tr. at 105: 2-5.  Further, he disagreed with the assertion that some voters did not have opportunity to vote in the 2012 election, because the Clerk's Office kept the polling centers open until every voter who was in line by the 7:00 p.m. deadline was able to vote. Tr. at 105:  6-17.   His testimony seems to imply that Defendant Gutierrez blames the voters who got out of line for their inability to vote. Defendant Gutierrez only begrudgingly agreed with the Board's findings in the December 2012 Resolution, stating that he did not want to agree with the Board's statements, but he had to agree. Tr. at 106: 1-9.   Additionally, Defendant Gutierrez admitted that he and Defendant Padilla congratulated their staff on a job well done and he continues to feel that overall the Clerk's Office did a good job on the 2012 election.  Tr. at 108: 8-25.  Defendant Gutierrez did testify that he intends to comply with the Board's Resolution.

Former County Clerk Defendant Padilla was even more defiant regarding a finding that her office made any errors in the 2012 election.  She stated that there was nothing she could have done to prevent the long lines which is obviously a false statement. Tr. at 237 11:25 – 238:  1-18 It is clear from the testimony by the Secretary of State's staff that had Defendant Padilla or Defendant Gutierrez requested additional voting machines for the 2012 election, they would have been provided. Tr. at 52:  24-25 – 53:  1-6.  Further, Defendant Padilla suggested that the voters who left the lines were responsible for their own decision not to wait. Tr. at 233:  9-10 ("if you want to vote, you're going to, you're going to wait and vote.").  Defendant Padilla also pointed out that voters could have voted early or absentee.  Tr. at 234:  11-25.  Notwithstanding

these rather arrogant comments, the Court acknowledges that Defendant Padilla is no longer the County Clerk and will have no involvement in the 2014 Election; however, Defendant Gutierrez is still director of the Sandoval County Elections Bureau.

Moreover, arguably the key testimony came from current County Clerk Defendant Eileen Garbagni.  This Defendant worked as a deputy clerk under Defendant Padilla for a number of years and has worked for the Clerk's Office for roughly 30 years.  Tr. at 261: 8-13.  Defendant Garbagni recognized that Defendant Padilla did not take an active role in managing elections and described her own management style as "more hands on."  Tr. at 262: 2-12.  However, when questioned about the shortcomings of the 2012 election, Defendant Garbagni gave some baffling and quite disturbing testimony.  She stated that she would not consider the 2012 election a disaster or a debacle.  Tr. at 265:  21-24.  In fact, she stated she felt everything went well in the 2012 election and the events were acceptable, with the exception of a few "kinks".  Tr. at 265: 19-25; Tr. at 266: 1-25; Tr. at 267: 1-25; Tr. at 268: 1-10.  She described the 2012 election as "very good" and stated she simply hopes to take the 2014 election from "very good" to "excellent."  Id.  Finally, Defendant Garbagni noted that Defendant Gutierrez will be a key part of her administration of the 2014 election.  When questioned why Defendant Gutierrez was not disciplined for his mistakes in the 2012 election, Defendant Garbagni testified that she did not see a reason to discipline him for simply doing his job.  Id.

## Discussion

## I.      The Court Accepts the Deposition of Theresa Fleming as an Exhibit

Plaintiffs offered the deposition of Theresa Fleming into evidence at the hearing. Defendants objected to the introduction of the deposition largely based upon their objection to the fact that Plaintiff Fleming was not physically present at hearing, rather than an evidentiary challenge to the deposition testimony.  The Court gave Defendants an opportunity to indicate

which portions that they felt, in fairness, should be considered along with the portions that Plaintiffs highlighted. Further, the Court notes that Defendants were able to examine Plaintiff during her deposition. The Court overrules Defendants' objection to the introduction of Plaintiff Flemings deposition.  It shall be received as an exhibit to the hearing.

## II.        The Board and Defendants Padilla and Duran Shall be Dismissed as Defendants

It is clear that the Board took immediate responsibility for the disastrous 2012 election and felt it should not have occurred and certainly should not happen again.  See Defendants' Hearing Exhibit C (noting that some voters left because of the long wait, deeming this unacceptable, and setting forth procedures to prevent this happening in the future).  The Court does not fault the Board's response to the 2012 election.  The Court notes that it originally denied summary judgment as to Defendants, including the Board.  **(Doc. No. 104)**.  However, after the Court issued its oral ruling at the August 19th hearing, the parties presented evidence in support and opposing the Motion for Injunction. It was during this evidence that it became clear to the Court that the Defendants who retain the ability to reallocate the voting machines are Defendants Gutierrez and Garbagni, not the Board itself.

Considering the relief requested by Plaintiffs, the Court finds that the Board is not a proper party in this matter.  Plaintiffs are asking the Court to order compliance with the 2013 Resolution.  The Board is the body that passed that Resolution and since the election is less than four months away can no longer make changes to the polling sites.  The Board has done all it can do to ensure that the 2014 election runs smoothly.  At this time, the only parties who should be subject to injunctive relief are the parties who are responsible for administering the 2014 election, Defendants Garbagni and Gutierrez.  The Board can do no more than pass the Resolution, because the County Clerk is a separate elected official not directly answerable to the Board. Additionally, the Bureau of Elections, including its Director, answers to the County

Clerk.  Finally, Defendant Padilla has since retired from the County Clerk's Office and will have no control over the 2014 Election.  Accordingly, the Court dismisses the Board and Defendant Padilla as defendants in this case.

Further, the Court notes that Defendant Diana Duran, named in her capacity as the Secretary of State, should also be dismissed as a defendant.  Defendants originally brought Defendant Duran into this matter as a defendant because the Secretary of State's Office is responsible for providing voting machines to the County for elections.  However, it is clear from the testimony in this case that the Secretary of State's office provided Sandoval County with exactly as many voting machines and related equipment as requested by Sandoval County, and that request was based on Defendant Gutierrez' recommendations.  Accordingly, there is no merit to the argument or suggestion that Defendant Duran in any way contributed to the 2012 general election debacle in Rio Rancho.  Defense counsel stated at the hearing that County Defendants took full responsibility for the 2012 election fiasco.[6]  Finally, Plaintiffs in this case are only seeking injunctive relief; at this point the Secretary of State's office has no involvement in the success of the 2014 election.  Defendant Duran has already approved the polling center locations, and has already received the request for the voting machines.  Accordingly, Defendant Duran shall also be dismissed as a defendant in this case.

## II. Plaintiffs are entitled to Injunctive Relief

To obtain a preliminary injunction the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm if the injunction is not granted; (3) the balance of equities is in the moving party's favor; and (4) the preliminary injunction is in the public interest.  Republican Party of New Mexico v. King, 741

---

[6] The Court agrees that the Board accepted responsibility for the 2012 election debacle in Rio Rancho; however, as previously noted, the Court does not consider Defendants Padilla, Gutierrez and Garbagni having accepted any responsibility for the election problems in 2012.

F.3d 1089, 1092 (10th Cir. 2013).

*Likelihood of success on the merits*

The Court finds that there is a likelihood that Plaintiffs will succeed on the merits of their case.   Plaintiffs' claims are based upon the Equal Protection Clause in the Fourteenth Amendment.   "When the state legislature vests the right to vote . . .  in its people, the right to vote as the legislature has prescribed is fundamental; and one source of its fundamental nature lies in the equal weight accorded to each vote and the equal dignity owed to each voter."  <u>Bush v. Gore</u>, 531 U.S. 98, 104(2000). The Supreme Court has made it clear that vote dilution based upon geographic location implicates the Equal Protection Clause.  <u>See</u> <u>Moore v. Ogilvie</u>, 394 U.S. 814, 819 (1969) ("The idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government."); <u>Reynolds v. Sims</u>, 377 U.S. 533, 566 (1964) ("Diluting the weight of votes because of place of residence impairs basic constitutional rights under the Fourteenth Amendment just as much as invidious discriminations based upon factors such as race.")

Defendants argue that there is no danger that the 2012 election will repeat itself, because the 2013 Resolution sets out resources that even Plaintiffs find adequate.  The Court has already rejected this mootness argument.  <u>See</u> (**Doc. No. 104**), Memorandum Opinion and Order Denying Defendants' Motion for Summary Judgment, entered August 20, 2014.   Further, it is clear based upon the testimony presented at the hearing that while the polling places are set, Defendants Garbagni and Gutierrez may still move equipment.   Additionally Plaintiffs have shown that there is a reasonable likelihood the same sort of violations will take place in the 2014 election absent a court order.  The current County Clerk, Defendant Garbagni, is in complete denial about the failure of the 2012 election, calling it "very good." Tr. at 266:  18-20.  Moreover, Defendant Garbagni has determined that Sandoval County will have the same

17

Director of the County's Bureau of Elections for the 2014 election, Defendant Gutierrez.

Defendants have tried to downplay the impact that Defendant Padilla's statements should have on this matter, because Defendant Padilla retired after the 2012 election and Defendant Garbagni is the current County Clerk.  Certainly Defendant Padilla's statements about the right to vote are alarming, but what is most concerning is the fact that her successor, Defendant Garbagni, apparently shares much of her philosophy.  Defendant Garbagni saw no issues with the 2012 election in spite of the Board's findings that the long wait times were unacceptable. The Court, on the other hand, sees five hour wait times to vote and voters actually leaving the polls as more than a "few kinks."  Further, the same person responsible for the 2012 catastrophe, Defendant Gutierrez, is responsible for the 2014 election including determining the sufficient number of voting machines for 2014.

Defendants also assert that Plaintiffs have failed to demonstrate an intentional rather than negligence act that led to a violation of their rights.  Again, the Court already rejected this argument in its ruling on the Motion for Summary Judgment.  See **(Doc. No.104)**. Further, the Court notes that Defendant Gutierrez' obvious disregard of information available to him from the vendor and from previous elections shows he made an intentional decision to not provide enough resources.  In fact, his own calculations (Plaintiff's Exhibit 9) demonstrate that he pre-determined the amount of voting machines without regard for previous number of voters or the capacity of the equipment being used. This was more than mere negligence.

Defendants repeatedly urged the Court to "trust them" and to allow them to fix the problem.  The Court cannot do so for a number of reasons.  First, there is a pattern of failing to allocate appropriate resources for Rio Rancho voters when other areas of Sandoval County do not experience the same problems.  Second, while Defendant Padilla may have retired, Defendants Gutierrez and Garbagni have not and they refuse to accept the significance of the

18

failures of the 2012 election.  Third, while the Board has accepted responsibility for and is taking the 2012 election debacle seriously, the Board unfortunately is not in charge of running the 2014 election in Sandoval County.   Defense counsel argued that the Court should not get involved in personnel matters nor should the Court rule based upon the testimony of "nervous" witnesses or personality conflicts.  The Court is doing none of those things by ensuring that there are adequate resources for the voters of Rio Rancho to participate, as is their right, in the 2014 election in the face of officials who fail to acknowledge the problems with 2012 election and who retain discretion to reallocate voting machines and related equipment in way that could potentially deprive the citizens of Rio Rancho of the right to vote yet again.

Here, Plaintiffs have shown there was no rational basis for Defendant Gutierrez' failure to provide enough voting resources, including polling centers and voting machines, to the citizens of Rio Rancho.  No other municipality or community in New Mexico had the same under-allocation of resources.   Accordingly, the Court finds that Plaintiffs have demonstrated a likelihood of success on the merits of the case.

*Irreparable harm*

Unquestionably, the right to vote is of paramount importance the citizens of the United States.  Here, it would be completely unacceptable if the evils of the 2012 elections (and prior elections) are repeated and eligible voters in Rio Rancho are again disenfranchised. Money damages would be grossly insufficient to compensate Plaintiffs if they are denied the opportunity to participate in the democratic process in this Country.  Plaintiffs would certainly be irreparably harmed if they are unable to vote because of another mismanagement of the election.

*Balance of equities*

Defendants argue that the federal court "micromanaging" a state election would violate the principles of federalism.  However, the Court did not do its own calculation of how many

voting centers or voting machines would be sufficient.  The Court is not creating its own plan for how to manage the 2014 Sandoval County election.  It is simply holding Defendants Gutierrez and  Garbagni to what the Board has determined to be an adequate election plan.  Defendants also argued that if the 2014 election goes smoothly, there were will additional lawsuits claiming that the election only went well because of this Court's Order.  Plaintiffs' counsel assured the Court that they have no intention of filing an additional lawsuit in the future and this case is focused simply on the 2014 election.  The Court need not accept representations of Plaintiffs' counsel, however, because if the 2014 goes well, there were will be no injury upon which  future Plaintiffs will sue and this case will be dismissed because there will no longer be any case or controversy.

The fact that a number of the factors that contributed to the delays in Rio Rancho were also present throughout the State without the same problems is a clear indication that the delays in Rio Rancho were not due simply to the VCC's and lack of an option to vote a straight party ticket.  It is clear that the intentional actions of those in charge of the 2012 Election led to the long voter lines which resulted in the disenfranchisement of voters. Thus, it is clear that the balance of equities weighs in favor of granting an injunction.

*Public Interest*

As noted several times above, voting is an integral part of this nation's government.  The public interest weighs heavily in favor of ensuring that citizens have the ability to vote in elections.

*No bond is required*

Fed. R. Civ. P. 65(c) provides:

The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully

enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(c).

However, the Tenth Circuit has stated:

> [W]e have held that a trial court may, in the exercise of discretion, determine a bond is unnecessary to secure a preliminary injunction 'if there is an absence of proof showing a likelihood of harm.' <u>Continental Oil Co. v. Frontier Refining Co.</u>, 338 F.2d 780, 782 (10th Cir.1964). Nevertheless, the <u>Continental</u> holding implies the trial court will comply with Rule 65(c) by at least giving consideration to whether the circumstances of a particular case justify the unusual practice of leaving the enjoined party bereft of security. Moreover, until such consideration is given, the trial court has not completed the task mandated by Rule 65.

<u>Coquina Oil Corp. v. Transwestern Pipeline Co.</u>, 825 F.2d 1461, 1462 (10th Cir. 1987).

Further in waiving the bond, the Court must make specific findings regarding why the bond is unnecessary.  See <u>SizeWise Rentals, Inc. v. Mediq/PRN Life Support Servs., Inc.</u>, 216 F.3d 1088 (10th Cir. 2000).

Here, the Court finds that a bond is unnecessary because "there is an absence of proof showing a likelihood of harm." <u>Coquina Oil Corp.</u>, 825 F.2d at 1462.   Defendants Garbagni and Gutierrez have already agreed to abide by the Resolution setting the amount of AutoVote machines at each polling place.  The Court is simply holding them to their word.  There will be no danger of harm flowing from an improper injunction, because according to Defendants' representation even absent an injunction, they would provide the same amount of voting machines.   Defendants cannot have it both ways; they cannot assure the Court that they will follow the Resolution then at the same time argue they will prejudiced by following the Resolution.

21

     **THEREFORE, IT IS ORDERED**, that Plaintiffs' Motion for Preliminary Injunction **(Doc. No. 90)** is **GRANTED**.[7]   Defendants Gutierrez and Garbagni are ordered to comply with the voting machine allocations set forth in the Board's 2013 Resolution for the 2014 election. Specifically, Defendants are forbidden from lowering the amount of voting machines and related equipment designated for each voting center.

     **IT IS FURTHER ORDERED,** that all claims against Defendants Board of County Commissioners for Sandoval County, Sally Padilla, and Diana Duran are dismissed with prejudice.

     **A separate Preliminary Injunction Order shall issue.**

 

                                _____
                                UNITED STATES DISTRICT JUDGE

---

[7]   At the August 19th hearing based on difficulties in serving Plaintiff Fleming with a subpoena, Defendants expressed concern that Plaintiff Fleming no longer resides in Sandoval County, and therefore lacks standing to pursue this matter as she cannot vote in future Sandoval County elections.  Defendants admitted they had been unable to confirm this fact before the hearing and that they currently lack a good faith basis to move for dismissal on this ground.  Accordingly, the Court has allowed limited discovery into the issue.  If Plaintiff Fleming has indeed moved away from Sandoval County, Defendants may again raise the issue of standing in a later pleading.