IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

TERESA FLEMING, DAVID DOYLE,
and PAULA PAPPONI,

       Plaintiffs,

  v.                                                   No. 13-CV-222 WJ/RHS

EDDIE GUTIERREZ, in his individual capacity;
SALLY PADILLA, in her individual capacity;
EILEEN GARBAGNI,
in her official capacity; DIANA DURAN,
in her official capacity; and
SANDOVAL COUNTY BOARD
OF COMMISSIONERS,

       Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO RECONSIDER COURT'S RULING ON
THEIR MOTION FOR SUMMARY JUDGMENT AS TO STANDING OF PLAINTIFFS
DOYLE AND PAPPONI;
and
DENYING DEFENDANTS' REQUESTS FOR MOOTNESS WITH RESPECT TO
PLAINTIFFS DOYLE AND PAPPONI**

       THIS MATTER comes before the Court as a continuation of the Court's consideration of the Sandoval County Defendants' Motion to Reconsider Their Motion for Summary Judgment, filed September 4, 2014 (Doc. 108)[1], which the Court recently granted in part with respect to Plaintiff Fleming, dismissing her from this case based on mootness. *See* Doc. 117. Having reviewed the parties' briefs and applicable law, the Court finds that Defendants have not met

---

[1] The Motion to Reconsider (Doc. 108) was filed on behalf of all the Sandoval County Defendants. However, before the Motion to Reconsider was fully briefed, the Court entered the Memorandum Opinion and Order Granting Plaintiff's Request for Preliminary Injunction (Doc. 111) wherein the Court dismissed all Defendants except Eddie Gutierrez and Eileen Garbagni. Accordingly, the term "Defendants" as used herein refers to Eddie Gutierrez and Eileen Garbagni.

their burden of demonstrating that Plaintiffs Doyle and Papponi no longer have a personal interest in this case; therefore, the motion for reconsideration is **DENIED**.

## BACKGROUND

This case arises out of problems administering the 2012 general election in Rio Rancho, New Mexico, which resulted in Rio Rancho voters standing in excessively long lines waiting in some instances for more than five hours to exercise their right to vote on Election Day in November, 2012. Plaintiffs sought declaratory and injunctive relief for violations of their constitutional and civil rights. The Court held a hearing on Defendants' motion for summary judgment, and denied the motion. *See* Doc. 104 (Mem.Op. & Order). The Court also held another hearing on August 19, 2014 on the issue of whether Plaintiffs were entitled to a preliminary injunction. *See* Docs. 105 and 109 (Clerk's Min. & Hrg. Transcript). The Court has recently entered a Memorandum Opinion and Order granting Plaintiffs' request for a preliminary injunction (Doc. 111), which was followed by the Court's issuance of a Preliminary Injunction Order prohibiting Defendants from modifying the designation of polling places as listed in the 2013 Resolution of the Sandoval County Board of Commissioners. Doc. 112.

At the August 2014 hearing on Plaintiffs' Motion for Injunction, Defendants raised the standing issue with regard to Ms. Fleming based on information that she had moved from Rio Rancho. The Court allowed Defendants to conduct limited discovery regarding the whereabouts of Ms. Fleming in order to be able to file an appropriate motion. Defendants filed a motion to reconsider standing of Plaintiffs, which the Court granted in part with respect to Ms. Fleming, finding that Plaintiff Fleming "had standing at the commencement of this lawsuit, but no longer has any personal interest in the case, and her participation in the case is therefore moot. . . ." Doc. 117 at 8. The Court ordered supplemental briefing on whether the remaining two Plaintiffs

continued to have standing in this lawsuit. Both parties have filed their briefs, which the Court now considers.

## DISCUSSION

Standing is determined "as of the commencement of suit. . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992); *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154-55 (10th Cir. 2005) (except for mootness, standing is determined "as of the filing of the complaint"). However, in order to continue to pursue their action in federal court, Plaintiffs Doyle and Papponi must be able to establish that they have suffered an "injury in fact" throughout the entire course of the litigation. This "time element of standing comes under the rubric of mootness doctrine." *Alexander v. Yale Univ.*, 631 F.2d 178, 183 (2d Cir. 1980). The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). *Becker v. Federal Election Comm'n*, 230 F.3d 381, 387 n.3 (1st Cir. 2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167 (2000) (citations omitted)). Defendants argue that neither of the two remaining Plaintiffs continue to have standing in this lawsuit, and that their claims have become moot. *See Brown v. Phila. Hous. Auth*., 350 F.3d 338, 343 (3d Cor. 2003) (doctrine of mootness requires that "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed"); *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1267 (11th Cir. 2001) (party's standing to sue is generally measured at time of complaint, with effect of subsequent events generally analyzed under mootness principles").

However, the party asserting mootness—here Defendants—bear the "heavy burden" of persuading the Court that the challenged conduct cannot reasonably be expected to start up again. *Friends of the Earth,* 528 U.S. at 189. Defendants offer several arguments to support

their position that the case is moot as to both remaining Plaintiffs: (1) Doyle and Papponi have not brought federal claims, and thus this lawsuit must be dismissed; (2) the face of the complaint demonstrates that Doyle and Papponi lack standing; and (3) Doyle and Papponi lack standing because they lack a personal stake in the way Rio Rancho polling locations are run on Election Day.

**I.        Dismissal of Federal Claims Does not Require Dismissal of Doyle and Papponi**

The Second Amended Complaint (Doc. 80) alleges three counts, two federal claims in Counts I and II (Equal Protection and Due Process, respectively), and Count III which asserts a violation of the New Mexico Constitution.   Defendants argue that the dismissal of Ms. Fleming requires the dismissal of the federal claims because only Ms. Fleming has alleged federal claims, and thus this Court no longer has jurisdiction over this case.  This argument works only if one accepts Defendants' premise that Plaintiffs Doyle and Papponi are not plaintiffs in the federal claims.

Count II alleges a violation of the New Mexico Constitution, and states that Doyle and Papponi "have standing to assert the rights of Rio Rancho voters who were deprived of the right to vote in the 2012 election."   Doc. 80, ¶ 80.  The significance of this language, according to Defendants, is that Doyle and Papponi have alleged *only* this state claim in the complaint, and have not made any assertions with respect to the federal claims.   It is not difficult to see why Defendants have taken hold of this argument.  The second amended complaint ("complaint") is rather inartfully drafted and is far from a model of clear compliance with Fed.R.Civ.P. Rule 8. Rule 8 requires enough factual allegations to provide not only "fair notice of the nature of the claim, but also grounds on which the claim rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 965 (2007); *Khalik v. United Air Lines,* 671 F.3d 1188, 1191 (10th Cir. 2012).  Nevertheless, a

modicum of scrutiny does reveal that the pleading contains sufficiently direct or inferential allegations with respect to all the material elements of the alleged federal claims.

Defendants' second argument, that Doyle and Papponi lack standing based on the face of the complaint, may be addressed at the same time, because if a fair reading of the complaint shows that Doyle and Papponi have asserted a violation of their voting rights under federal law, then the federal claims are still intact and the Court still has jurisdiction over this case. The complaint states that:

> David Doyle ("Doyle") is a resident of Sandoval County and he was a candidate for the State Senate, District 9 in the 2012 general election. **He voted in that election**.

Sec. Am.Compl., Doc. 80, ¶ 4 (emphasis added). The complaint also states:

> Paula Papponi ("Papponi") is a resident of Sandoval County and she was a candidate for Sandoval County Clerk in the 2012 general election. **She voted in that election**.

Sec. Am. Compl., Doc. 80, ¶ 5 (emphasis added). Count I asserts a federal equal protection claim as following, in part:

> The discrimination against **Plaintiff Fleming and other Rio Rancho voters** on both, or either, geographical location or political affiliation constitutes an equal protection violation.

Doc. 80, ¶ 55 (emphasis added).

> The Defendants effectively **deprived Plaintiff Fleming and a substantial number of Rio Rancho voters,** of the "constitutionally protected right to participate in [the 2012 election] on an equal basis with other citizens in the jurisdiction.

Doc. 80, ¶ 62 (emphasis added).

> As a consequence of the failure of Defendants Gutierrez and Padilla to provide Substantially equal voting facilities, **Plaintiff** and those **similarly situated** were discriminated against in the exercise of their franchise and were denied the right secured by the Fourteenth Amendment to the United States Constitution to equal protection under the law.

Doc. 80, ¶ 63 (emphasis added). Count II asserts a federal due process claim as following, in part:

> As a result of Defendants' actions, **Plaintiff Fleming and a substantial number of other Rio Rancho citizens** were effectively denied the right to vote in the 2012 general election so as to constitute patent and fundamental unfairness under the due process clause of the Fourteenth Amendment to the United States Constitution.

Doc. 80, ¶ 73 (emphasis added).

> As a consequence of the failure of Defendants Gutierrez and Padilla to provide adequate voting facilities, **Plaintiff Fleming and those similarly situated** were hindered, delayed and effectively deprived of their rights secured by the Constitution of the United States to vote in the 2012 general election.

Doc. 80,¶ 74 (emphasis added).

Defendants are correct that Doyle and Papponi appear in this lawsuit primarily as candidates who both allegedly "lost their elections due to voter suppression by the Sandoval County Clerk and her employees." Sec.Am.Compl., at 1. However, the Court finds that the complaint also alleges that both Doyle and Papponi are registered voters in Rio Rancho. Thus, the complaint can be fairly read to allege that both are included as individuals within the group of "Rio Rancho voters" who are "similarly situated" to Plaintiff Fleming and who allege that Defendants' failure to provide an adequate voting system in Rio Rancho deprived them of a fundamental constitutional right. These allegations provide sufficient notice to Defendants that Doyle and Papponi are registered voters in Rio Rancho, and that they are within the group of voters who allege federal constitutional violations due to the voting problems that occurred in Rio Rancho in the 2012 election.

Defendants appear to assume that Doyle and Papponi have lost standing unless they have standing as voters. Although the Court finds that the complaint sufficiently alleges Doyle and Papponi as part of the group of injured voters, it is also worth noting that the dismissal of Ms. Fleming has not necessarily eliminated their standing in their roles as candidates. Based on evidence presented at the August 19, 2014 hearing on Plaintiffs' motion for preliminary injunction, Doyle and Papponi, both Republican candidates, lost extremely tight races (within approximately 200 votes) in the 2012 election. Defendants' expert, Professor Lonna Atkenson, testified that she could find no statistical proof that Republican candidates were harmed by voters leaving the polls before casting their votes in 2012. She could not conclude any harm occurred to voters because there was no way to determine who left the polls without voting, even though 80% of the Republican voters in Sandoval County live in Rio Rancho. Doc. 111 at 3 and 10. However, Professor Atkenson's conclusion that one could not statistically *prove* that Republican candidates were harmed by the voting system inadequacies does not necessarily preclude the possibility that overcrowding at the polls may in fact have prevented both Doyle and Papponi from winning the election. The complaint clearly asserts that Sandoval County officials suppressed the votes of Rio Rancho voters who voted; Doyle and Papponi were on the ballot in that election; and thus the complaint still asserts that the County's failures that election night caused a loss of election for those two individuals.[2] Doyle and Papponi would still have standing in the federal claims on that basis, as well as being included in the group of registered Rio Rancho voters referenced in the complaint.

---

[2] The Court agreed with Professor Atkenson that from a statistical proof standpoint, "one cannot say that Republican candidates were harmed more by voters in Rio Rancho leaving the polls before casting their votes in 2012." Doc. 111 at 11. However, Professor Atkenson's statistical analysis did not take into account Rio Rancho's approximately 7% per year of population growth and that as a result, "there could have many more voters who were unable to vote." *Id.* The Court also noted that "the evidence demonstrates that this issue only occurred in Rio Rancho where 80% of the County's Republication voters reside." *Id.*

Both parties cite to cases that are not dispositive for their respective positions. The Court agrees with Defendants that Plaintiffs are inapposite on the issues presented. For example, Plaintiffs rely on *Otero v. State Election Bd. of Okla.,* 975 F.2d 738, 740 (10th Cir. 1992) to argue that a Plaintiffs have standing as both candidates and voters. The question in that case looked only at whether an atheist had standing to challenge the use of churches for polling places, as compared to an individual who was "a registered voter and a once and possible future candidate for mayor. . . ." *Otero* did not analyze the standing issue before the Court here, which is whether Plaintiffs—regardless of whether they are registered voters or possible future candidates—have sufficiently alleged injury and have standing. Plaintiffs also cited to *Kansas Judicial Review v. Stout*, which is similarly unavailing. 519 F.3d 1107, 1115 (10th Cir. 2008). *Stout* involved a freedom of speech issues for a judicial candidate and a political action committee. While it did address standing for these individuals, it does not answer the question in the instant case, which is whether Plaintiffs Doyle and Papponi have standing based on the allegations in the Second Amended Complaint.

Defendants have come up with a case that appears to support their position. In *Roberts v. Wamser et al,* 883 F.2d 617 (8th Cir. 1989), Michael Roberts was an unsuccessful black candidate for his party's nomination for city alderman who brought suit under the Voting Rights Act. The district court found that Voting Rights Act violation had occurred, but concluded that the violation did not result in Roberts' defeat. The court denied Roberts a manual recount of the vote, but did require the Board of Aldermen to comply with certain conditions in future elections. The Board of Aldermen appealed, arguing in part that the district court had improperly granted Roberts standing to contest the election result under the federal Voting Rights Act. The Eighth Circuit reversed, agreeing with the Board and finding that Roberts was

8

not seeking to enforce his right to vote as an "aggrieved person" within the meaning of the Voting Rights Act.  The court noted specifically that:

> . . . Roberts is not an aggrieved voter suing to protect his right to vote**.  Nowhere in his complaint (or anywhere else) does Roberts claim that his right to vote has been infringed because of his race**. Nor does Roberts allege that he is suing on behalf of persons who are unable to protect their own rights. The asserted personal injury for which Roberts seeks a remedy is not the denial of his right to vote, but rather the loss of the votes that he claims he would have received if not for the allegedly disproportionate difficulties of black voters in coping with punch-card voting.

883 F.2d at 621 (emphasis added).   Defendants focus on these findings and facts, analogizing them for use in this case, but those facts and findings cannot be applied here. Unlike the complaint in *Roberts* which contained no allegations at all about Roberts' status or injury as a voter, the Second Amended Complaint here asserts that Plaintiffs Doyle and Papponi were harmed not only because they lost their election as a result of inadequate voting machines and unreasonably long lines, but also includes them as voters who were harmed and will continue to be harmed in the future when they exercise their right to vote in Rio Rancho.   Accordingly, the dismissal of Ms. Fleming does not require the dismissal of the federal claims, or the dismissal of Plaintiffs Doyle and Papponi.  The complaint gives sufficient notice to Defendants that these individuals are alleging violations of federal law as voters as well as candidates.

**II.     Both Plaintiffs Doyle and Papponi Continue to Have a Personal Stake in this Case**

Defendants also contend that both Doyle and Papponi have lost any personal stake in this case after the dismissal of Ms. Fleming.   They claim that Mr. Doyle does not live in Rio Rancho and Ms. Papponi does not vote in person on Election Day.

These arguments do not provide any facts which meet Defendants' burden of demonstrating mootness.  It is true that Mr. Doyle does not live in Rio Rancho, but he testified

that he is registered to vote in Rio Rancho. Doc. 109 (Hrg. Tr.) at 245:13-16. In 2012, his objective was not only to vote on election day as he usually did, but as a candidate he liked to "get to see the voters." Doc. 109 at 241:21-25. He described the slow pace of the lines at one of the voting stations (Puesta Del Sol on Southern) as "mind-boggling," and that the lines were "out the building" and "down the sidewalk. . . " and noted that even parking was a problem. Doc. 109 at 242:1-13. Doyle ended up voting at Rio Rancho Middle School when other individuals who had just voted there showed up at Puesta Del Sol and said the lines were shorter there. Doc. 109 at 242:7-11. He waited to vote, but for only about an hour. Doc. 109 at 242-243:21-5. While Doyle may not be running for political office in the upcoming election, and did not wait to vote for five hours as did many other Rio Rancho voters, Doyle has asserted and testified that he is a registered Rio Rancho voter and as such may vote in any of the Rio Rancho polling places in the upcoming election and in future elections.

It is also true that Papponi voted by absentee ballot in both the 2008 and 2012 elections. Doc. 109 at 252:11-16. However, there is no certainty that she will never vote in person on election night in Rio Rancho. Both Doyle and Papponi each continue to maintain a stake in the litigation, as they remain Rio Rancho voters who intend to vote this November. The injury alleged in the complaint is one that is presented as having the potential of recurrence, and the Court has found this to be a real potential. The option to vote at the polls in the Rio Rancho polling centers remain open to them and keep alive their alleged injuries in this case.

The potential for repetition is an important consideration and is sufficient to preclude a finding of mootness. In *Majors,* the plaintiff was a candidate for county assessor on the Libertarian Party ticket in 1998, who filed suit a week before the election asking for a preliminary injunction. The election came and went without the injunction being granted, and

Majors was defeated. Majors declined to run for public office in 2000, and the district court held that the case had become moot, finding that Majors' inaction made the capable of repetition exception inapplicable. On appeal, the Seventh Circuit reversed, finding that plaintiff had standing and the action was not moot. *Majors v. Abell,* 317 F.3d 719 (7th Cir. 2003).[3] The Seventh Circuit also emphasized that, in election cases in particular, disputes did *not* need to be capable of repetition by the same plaintiff, and that it was enough that the disputes were capable of repetition at all. *Id.* at 723 (courts do not apply literal reading to exception to mootness requirement that the case be capable of repetition *by the same plaintiff*) (emphasis in original). In other words, Majors would not be required to run in every election in order to keep his suit alive. *Id.* at 722.

More than once, this Court has expressed the same kind of concern as was expressed in *Majors*—a concern that the voting disaster would reoccur in the upcoming election, despite the promises of Defendants and the 2013 Resolution passed by the Sandoval County Board of County Commissioners ("Board"):

> . . .[T]he Court is concerned that Defendants are free to amend the resolutions passed and return to the previous insufficient number of voting centers and voting machines. Under state law, Defendants are unable to change the polling locations within four months of the election without approval of a state district judge; however, Defendants retain the discretion to reallocate the voting machines and printers up to and even on Election day. See NMSA §1-3-5 ("No precinct shall be created, divided, abolished or consolidated or boundaries or polling place therein changed less than four months prior to each election, except by of the district court."). Further, the actual amount of voting machines is not a fixed number, but is instead simply an equation whose result in subject to change.

Doc. 104 at 5.

> Defendants essentially ask the Court to "trust them" to do the right thing in the future. The Court cannot stake a right as fundamental of the right to vote on

---

[3] The court drew a parallel between election challenges and cases involving challenges to abortion laws, which are often unresolved before the termination of pregnancy, stating "[a] candidate plaintiff no more has a duty to run in every election in order to keep his suit alive than an abortion plaintiff has a duty to become pregnant again at the earliest possible opportunity in order to keep her suit alive." *Majors*, 317 F.3d at 722.

> officials who have previously grossly mishandled elections without some sort of safeguard beyond their word. The Court finds that the violations may be reasonably expected to recur in the future.

Doc. 104 at 6.

> Further, it is clear based upon the testimony presented at the hearing that while the polling places are set, Defendants Garbagni and Gutierrez may still move equipment. Additionally Plaintiffs have shown that there is a reasonable likelihood the same sort of violations will take place in the 2014 election absent a court order.

Doc. 111 at 17.

It was for just this reason that the Court issued a preliminary injunction, in order to preclude any such modification of the polling places or equipment as designated in the Board's Resolution. *See* Doc. 112. Based on the foregoing discussion, Plaintiffs Doyle and Papponi have alleged to be and are registered voters in Rio Rancho, and continue to have a personal stake in this lawsuit.

### III. Prudential Mootness Doctrine Will Not Be Considered

Defendants urge the Court to apply the doctrine of prudential mootness, which may be applied in cases "where a plaintiff starts off with a vital complaint but then a coordinate branch of government steps in to promise the relief [sought]." *Winzler v. Toyota Motor Sales U.S.A., Inc.,* 681 F.3d 1208, 1210 (10th Cir. 2012). At this point, it is fitting to reiterate what the United States Supreme Court has had to say about this fundamental right:

> Voting rights are fundamental, and alleged disfranchisement of even a small group of potential voters is not to be taken lightly." *O'Brien v. Skinner*, 409 U.S. 1240, 1242 (1972); see also *Romer v. Evans*, 517 U.S. 620, 650, n.3 (1996) ("the right to vote [is] a fundamental political right") (citation omitted). "Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized. *Reynolds v. Sims*, 377 U.S. 533, 561-62 (1964). Specifically in regards to local elections, the Supreme Court has stated, "participation in local

> government is a cornerstone of American democracy." *F.E.R.C. v. Mississippi*, 456 U.S. 742, 789-90(1982) (J. O'Connor dissenting) (citation omitted).

Doc. 111 at 2-3 (Mem. Op. & Order Granting Mot. for Prel Inj.).   Dismissal on the basis of prudential mootness, where constitutional mootness is not found, is entirely discretionary. *Fletcher v. U.S.*, 116 F.3d 1315, 1321 (10th Cir.1997); *see also S. Utah Wilderness Alliance v. Smith,* 110 F.3d 724, 727 (10th Cir.1997) (prudential mootness "addresses not the power to grant relief but the court's discretion in the exercise of that power.").  A court may dismiss a case under the prudential-mootness doctrine "if the case is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant."  *Fletcher,* 116 F.3d at 1321.  In light of the Court's findings after having considered the parties' briefing and arguments, additional testimony and evidence presented at hearings on these issues, the Court finds that application of the prudential mootness doctrine would be misplaced.  As discussed above, the relief that is represented by the Board's Resolution can be undone easily enough by Defendants.  Given the seriousness of the fundamental right at stake, the Court is not inclined to use its discretion and potentially place at risk the relief afforded in the Board's Resolution by allowing a repeat of the Rio Rancho 2012 voting disaster.

## CONCLUSION

In sum, the Court finds and concludes that Defendants have not met their burden of demonstrating that this case has become moot with respect to Plaintiffs Doyle and Papponi.  The dismissal of Ms. Fleming does not require the dismissal of the federal claims, or the dismissal of Plaintiffs Doyle and Papponi.  The complaint gives sufficient notice to Defendants that these individuals are alleging violations of federal law as voters as well as candidates.

The Court further finds and concludes that both Plaintiffs Doyle and Papponi each continue to maintain a stake in the litigation, as they remain Rio Rancho voters who intend to vote this November.

The Court further finds and concludes that there is no basis for the Court to use its discretion and apply the doctrine of prudential mootness to this case based on any action taken by any governmental entity, namely, the Sandoval County Board of Commissioners.

**THEREFORE,**

**IT IS ORDERED** that the Sandoval County Defendants' Motion to Reconsider Their Motion for Summary Judgment **(Doc. 108)** is hereby DENIED on the basis that Defendants have not shown that this case is moot with respect to Plaintiffs Doyle and Papponi.

_____
UNITED STATES DISTRICT JUDGE